JUNE D. COLEMAN, State Bar No. 191890
*jcoleman@kmtg.com*
KRONICK, MOSKOVITZ, TIEDEMANN & GIRARD
A Professional Corporation
400 Capitol Mall, 27th Floor
Sacramento, California 95814
Telephone: (916) 321-4500
Facsimile: (916) 321-4555

Attorneys for Defendant PERFORMANT
RECOVERY, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| AIYANA PRICE-PAULINE, an individual,<br><br>           Plaintiff,<br><br>      v.<br><br>PERFORMANT RECOVERY INC.,<br>PENNSYLVANIA HIGHER EDUCATION<br>ASSISTANCE AGENCY,<br><br>           Defendants. | Case No. 3:14-cv-00850-JD<br><br>**OPPOSITION TO MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Date:      September 16, 2015<br>Time:      10:00 a.m.<br>Crtrm.:    11<br><br>The Hon. James Donato |

## I.

## INTRODUCTION

Plaintiff seeks an award of fees, which Plaintiff is entitled to. However, the fees requested our excessive because Plaintiff's case was over staffed with 9 people, the amount of time incurred for specific activities was excessive, and Plaintiff seeks to recover amounts that are clerical or overhead, or not related to this case. this is a simple case, and should not have taken more than $40,000-$50,000 for the simple written discovery, and six depositions, and 1 mediation. In fact, a reasonable fee would be significantly less given the activities in this case where there is no factual dispute.

OPPOSITION TO MOTION FOR ATTORNEYS' FEES AND COSTS

## II.

## **FACTUAL BACKGROUND**

This case is not a he said/she said case.  The only phone call with Ms. Price-Pauline is recorded, and there is no dispute as to what was said.  All other calls (one with Plaintiff's mom and the rest with Plaintiff's counsel) are also recorded.  Plaintiff's case focused on the premise that PRI (Performant Recovery, Inc.) had to offer a lower rehabilitation payment plan which was reasonable and affordable in accordance with regulations which were amended and clarified, and operational after PRI's contact with Ms. Price Pauline.   Despite Plaintiff's representations in the moving papers, PHEAA, the creditor and co-defendant in this case, never authorized PRI to offer an income sensitive rehabilitation plan by providing authority or the formula for calculating income based rehabilitation plan payments. Nonetheless, the authority provided by PHEAA did allow PRI to extend reasonable and affordable payment plans to rehabilitate Ms. Price-Pauline's student loan, until Ms. Price Pauline provided information that indicated she had a negative monthly cash flow, with expenses exceeding income.  At that point, there was no reasonable and affordable payment that could be extended.

It is undisputed that Ms. Price-Pauline told PRI in the only telephone conversation she had with PRI that she had $880 in income, and $110 in expenses, per month, leaving her with $770 that she could use to pay her student loan.  (Sept. 18, 2013 Telephone Transcript, Exhibit A, pp. 3-5.)  This included a $50 per month gym bill.  It is also undisputed that PRI offered her a payment plan of $146 per month (*id.* at p. 9), well within that $770 left after Ms. Price-Pauline's monthly expenses were deducted.

Once East Bay Community Law Center ("EBCLC") got involved, EBCLCwrote a letter for Ms. Price Pauline that indicated she had income of approximately $886 and expenses of $879 per month, which did not include the $50 monthly gym bill.  (October 15, 2013 Letter from A. Price-Pauline.)  With the $50 monthly gym bill Ms. Price referenced in her initial call, Ms. Price-Pauline had negative cash flow per month, according to her HERA letter.  Therefore, there was no rehabilitation plan that would satisfy Ms. Price-Pauline's claimed reasonable and affordable rehabilitation payment plan.

1    Once the lawsuit was filed, Ms. Price Pauline's financial circumstances were also presented

2    differently.  For the Court, Ms. Price-Pauline reported income of $897 and expenses of $519 per

3    month.  (Application to Proceed in Forma Pauperis, Dkt. 11.)  Again, leaving available $378 per

4    month for student loan payments.

5        Ms. Price-Pauline also submitted a declaration to the Court in support of a temporary

6    restraining order, which stated her income was $897 and her expenses were $879 per month.  Ms.

7    Price-Pauline's declaration also indicated that she lived with her mother, who has income of $690

8    per month, including food stamps.  (Price-Pauline Decl., Dkt. 6-2, ¶¶ 3, 5-6.)

9        And finally, in response to discovery requests asking her to identify each of her monthly

10   expenses, including creditor name, etc., Ms. Price Pauline stated joint monthly payments with her

11   mother of approximately $1,100, and her $897 monthly income combined with her mother's $690

12   of monthly income with food stamps, creates a combined income of $1,587.  These included car

13   insurance, car payments, and gas, even though Ms. Price Pauline represented to PRI during the

14   initial call and represented to the Court in her in pauperis application that she did not own a car.

15   Also, this does not include the income Mr. Price Pauline had from a job which she referenced in

16   her tax filings.  As you can tell, this case ultimately came down to (a) whether the regulations

17   required PHEAA to allow PRI to extend a lower rehabilitation payment plan and (2) whether the

18   $146 per month was an amount that fit the reasonable and affordable payment requirements, if

19   applicable, given the information that PRI had.

20       Against this backdrop, nine different attorneys worked on this very simple case,

21   duplicating efforts and performing non-attorney activities which would be performed by clerical

22   staff as a part of overhead.  This is not a case that went to trial or even had a dispositive motion –

23   or any real motions.  This is a case where Plaintiff and PRI essentially propounded a set of

24   discovery, and conducted a total of 6 depositions.  And ultimately reached a settlement that was

25   hundreds of thousands less than originally valued by Plaintiff.  In a case that was driven by what

26   PHEAA would permit PRI to do, Plaintiff settled with PHEAA for a $5 rehabilitation plan.  Any

27   fees awarded should bear in mind that initially, there were 2 defendants, and PHEAA authority is

28   what drove this case.  Plaintiff's desire to not settle with PHEAA for no monetary recovery should

1    not mean that PRI should bear an inequitable proportion of attorneys' fees.

2                                      **III.**

3                            **LEGAL ANALYSIS**

4          Despite the nearly 6 pages of factual background, Plaintiff accepted PRI's offer of judgment

5    that included reasonable attorneys' fees and costs to be determined by the Court if not agreed to by the

6    parties.  The starting point for determining a reasonable attorney's fee is the "lodestar" figure, which

7    is the number of hours reasonably expended in the litigation multiplied by a reasonable hourly rate.

8    (*Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983); *Camacho v. Bridgeport Financial, Inc.,* 523 F.3d

9    973, 978 (9th Cir. 2008).)  The lodestar figure presumptively represents a reasonable attorney's fee.

10   (*Gates, supra*, 987 F.2d at 1397.)  In "rare" cases, upward or downward adjustments may be made to

11   the lodestar figure for factors which are not deemed subsumed in the initial calculation. (*Id.* at 1402.)

12         Various factors are considered in determining a reasonable fee, although the same factor

13   cannot be used to determine the lodestar figure and then used again to adjust the lodestar figure.

14   These factors include:  (1) the time and labor required; (2) the novelty and difficulty of the issues

15   involved; (3) the skill required to perform the legal services properly; (4) the preclusion of other

16   employment by an attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is

17   fixed or contingent; (7) time limitations imposed by a client or other circumstances; (8) the amount in

18   question and *results obtained*; (9) the experience, reputation, and ability of the attorneys; (10) the

19   "undesirability" of the case; (11) the nature and length of the professional relationship with the client;

20   and (12) awards in similar cases.  (*Id.* at 1402 n.5 (emphasis added).)

21         The district court has "considerable discretion" in determining the reasonableness of a fee

22   award because the district court is in the best position to know the work and skill of the attorneys

23   before it.  (*Webb v. Ada County,* 195 F.3d 524, 526 (9th Cir. 1999).)  Many district courts permit

24   downward adjustments in appropriate circumstances in the context of the FDCPA.  (See *Jerman v.*

25   *Carlisle, McNellie, Rini, Kramer & Urlich LPA*, 130 S. Ct. 1605, 1621, n.16 (2010) (citing *Schlacher*

26   *v. Law Offices of Phillip J. Rotche & Assoc., P.C.*, 574 F.3d 852 (7th Cir. 2009) (relying on *Hensley v.*

27   *Eckerhart*, 461 U.S. 424 (1983)); *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1148-51, & n.4

28   (9th Cir. 2001)).)  Indeed, *Jerman* observed that a court has discretion in calculating reasonable

1  attorney's fees under the FDCPA, when an alleged violation is trivial and the actual damages, as in

2  *Carroll* and here, are *de minimus*.  (See *Jerman, supra*, 130 S. Ct. at 1621, n.16 (referencing *amicus*

3  suggesting that attorneys' fees may shape financial incentives even where actual and statutory

4  damages are modest).)

5  **A.    The Requested Hours Should Be Reduced by the Clerical Hours Claimed.**

6          Price-Pauline's request includes time for secretarial and clerical tasks.  Even if these tasks

7  are performed by a law clerk or a lawyer, they are not generally recoverable because they are not

8  generally recoverable from a private paying client.  (See 2 Pearl, Richard, California Attorney Fee

9  Awards (3d ed. rev. 2011) pp. 457-58, 476, §§ 9.4, 9.29; <u>see, e.g.</u>, *Davis v. City & County of San*

10 *Francisco*, 976 F.2d 1536, 1543 (9th Cir. 1992) (time spent on clerical activities and activities

11 attributable to overhead are not recoverable); *Johnson v. Weinstein & Riley, P.S.*, 2011 WL

12 1261578, *5 & fn.4 (E.D.N.C. 2011) (examples of clerical work not appropriately compensated as

13 attorney time include: collating and filing documents with the court; issuing summonses; scanning

14 and mailing documents; reviewing files for information; and making arrangements for

15 deposition).)  Price-Pauline seeks to be compensated for what appears to be clerical services, and

16 other activities that would be included in overhead, including:

| Name | Date | Description | Hours |
|---|---|---|---|
| Ryan | 2/11/14 | Draft retainer & co-counsel agreement | 6.0 |
| Jaramillo | 5/28/14 | Prepare for CMC and research case law re: CMC | 1.0 |
| Jaramillo | 8/12/14 | Teleconference with mediator to confirm receipt of mediation brief and that audio will play | .1 |
| Jaramillo | 8/21/14 | Email potential co-counsel | .1 |
| Jaramillo | 12/10/14 | Calendar trial dates from Court's order and prepare meme re: same | .5 |
| Borison | 12/22/14 | Review Complaint to consider co-counseling on case | 1.5 |
| Borison | 12/26/14 | Follow up on potential case | .25 |
| Jaramillo | 12/26/14 | Draft memo regarding discovery and strategy – because transferring case | 1 |
| Borison | 1/7/15 | Meet with Plaintiff regarding potential representation as co-counsel | 3.35 |
| Borison | 1/14/15 | Follow up with co-counsel regarding schedule and deadlines because taking on new case | 1.2 |
| Zinner | 1/14/15 | Set up depositions | .2 |

| Abraham | 1/14/15 | Telephone conference with court reporter re: deposition logistics. | .2 |
| Abraham | 1/20/15 | Send deposition exhibits to court reporter | .1 |
| Abraham | 1/21/15 | Telephone conference with court reporter re: deposition logistics | .1 |
| Zinner | 1/28/15 | Draft amended retainer agreement & co-counsel agreement | .7 |
| Abraham | 2/9/15 | Left a message for J. Coleman re: discovery | .1 |
| Abraham | 2/24/15 | Telephone Plaintiff's mom to confirm interview time. | .1 |
| Abraham | 2/25/15 | Telephone Plaintiff's mom to confirm interview time. | .1 |
| Abraham | 3/11/15 | Call Court to confirm CMC is cancelled | .1 |
| Abraham | 3/13/15 | Telephone Plaintiff's mom to check on documents | .1 |
| Abraham | 3/16/15 | Telephone Plaintiff's mom to check on documents | .1 |
| Abraham | 3/18/15 | Set up transfer method for documents | .1 |
| Abraham | 4/1/15 | Call court reporter re: transcript | .1 |

These hours should be reduced from the fee request.

Additionally, Abraham met with Plaintiff's mom to collect documents. While this could be characterized as a clerical function, at best, it is a paralegal function. The Court should award no more than $125 per hour for the 1.5 hours Abraham identified on Mach 18, 2015.

**B.** **Certain Hours Are Not Incurred as Part of Prosecuting the Case Against PRI.**

Plaintiff seeks to recover fees for the following hours which are not related to prosecuting the case against PRI.

Jaramillo has 2.0 hours for drafting the Temporary Restraining Order papers on February 27, 2014, which would have been addressed to PHEAA. Additionally, this Motion was filed on February 26 and denied the same day, which was the day before Jaramillo drafted it. (*See* Order Denying TRO, Dkt. 10.)[1]

Jaramillo spent 1 hour on August 13, 2014, drafting a motion to compel PRI's attendance at the mediation, when PRI was planning on attending and nothing indicated otherwise.

On December 10, 2014, Abraham researched the amount owed by Plaintiff, after settling

---

[1] The TRO moving papers were to be used for a Preliminary Injunctive Order, but Plaintiff voluntarily withdrew the Motion approximately 7 days after it was denied as a TRO, on March 6th. (*See* Notice of Withdrawal, Dkt. 13.)

the case with PHEAA for a rehabilitation plan on or before May 2014.  (See Notice of Settlement, Dkt. 24.)  Abraham also has listed .2 hours to research Plaintiff's student loan and credit report, and reported his findings to Plaintiff on May 7, 2015, a year after settling with PHEAA, the creditor, and presumptively after the loan was rehabilitated.

All of these hours are not compensable against PRI.  Furthermore, the hours incurred before May 22, 2014, were incurred as to both defendants.  Assuming that a majority of the litigation memo and the complaint were applicable to PRI, the time the Court awards for each of these should be reduced by 20% to reflect the time applicable only to PHEAA.

**C.    Certain Requested Hours Are Excessive and Should Be Disallowed.**

Half of the lodestar calculation is the reasonable hours component.  "The district court should exclude from [the] initial fee calculation hours that were not 'reasonably expended.'" (*Hensley, supra*, 461 U.S. at 434.)

> Waste is not in the public interest. The Congress that passed the Fair Debt Collection Practices Act in 1977 could hardly have wished to reward lawyers for doing nonproductive work and wasting their adversaries' time and the time of the courts as well. In directing the courts to award "reasonable" fees, on the contrary, Congress undoubtedly wished to ensure that the lawyer representing a successful plaintiff would receive a reasonable fee for work reasonably found necessary-nothing less, and nothing more.

(*Lee v. Thomas & Thomas*, 109 F.3d 302, 306-07 (6th Cir. 1997).)

The Court should exclude from the initial fee calculation hours that were not "reasonably expended," i.e, hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." (*Hensley, supra*, 461 U.S. at 434 (internal citations omitted), *see also Levander v. I.C. System, Inc.*, 2011 WL 1630171, *3 (E.D. Mich. 2011).)  This is especially true when a matter is over staffed with 9 professionals for a simple case involving a simple issue with no real disputed facts.  Recordings for all conversations were available.  Plaintiff's representations as to her financial condition were recorded, put into letters, and put into pleadings before this Court.  Indeed, Plaintiff's

1   allegations really focused on the 14 phone calls with Plaintiff's counsel before the case was filed.

2       There are instances where 2 people did the same activity, such as attending the case

3   management conference on May 29th (Ryan 3.0 hours and Zinner-.7 hours.); meeting with Plaintiff

4   on July 25th regarding discovery (Djemalf and Ryan -1.0 hours each); meeting with Plaintiff

5   regarding the mediation on August 18th (Diamond-2.0 hours and Jaramillo-1.5 hours); attending

6   the August 13th mediation (Diamond-8 hours and Jaramillo- 8.5 hours), reviewing PRI produced

7   documents on December 16th (Zinner-.8 hours) and December 19th (Abraham-1.0 hours).  The

8   Court should reduce the duplicative hours, and PRI proposes that the underlined hours would be

9   reduced for purposes of economy unless it made sense to have the trial attorney do the activity,

10      Moreover, the time spent on the Complaint is excessive.  From a review of fee motions,

11  most of the complaints alleging violation of the FDCPA are drafted in 2-3 hours.  (*See, e.g.,*

12  *Salamon v. Creditors Specialty Service Inc.*, 2012 WL 762014, *5 (N.D. Cal. 2012) , case no. 11-

13  172 CW, and excerpts from Supporting Declaration, Exhibit E (attorneys sought 1.8 hours to draft

14  Complaint and another .4 hours to meet and confer with client).) This Complaint was drafted by a

15  paralegal for 18 hours over a month (Tehva-1/27, 2/7, 2/14, 2/20), and reviewed by an attorney for

16  .4 hours.  It appears that this is a case where a matter that is worked on and set aside, and then

17  picked up again and again, results in too many hours for the task.  The paralegal time should be

18  cut in at least half.

19      Likewise, a litigation memo should not take 16.65 hours, which Plaintiff seeks in her

20  Motion.  this litigation memo was worked on by three different people spanning three months

21  (Tehva – 11/26, 12/2, 2/11; Silva – 12/12; Ryan – 2/28; Zinner – 1/29, 2/14).   This time is

22  excessive and the paralegal time should be cut by two-thirds.

23      Similarly, in addition to the time spent on the litigation memo, there was an additional 12.2

24  hours spent by 4 different people researching the regulations that provided the basis for the

25  lawsuit, and which was referenced in the numerous calls with Plaintiff's counsel before the case

26  was filed (Tehva- 1/17, 1/23, 3/6; Zinner-2/20; Abraham-12/9; Borison-1/2).  This is a prime

27  example of over staffing resulting in excessive billing.  The Court should allow no more than 2

28  hours attributable to researching Higher Education Act regulations.

There was also 14.7 hours by 2 people to research the bona fide error defense under the FDCPA (Jaramillo-5/5, 5/6; Diamond-6/6). This research project should have taken less than 2 hours. The paralegal time should be cut by approximately two-thirds at least, to 4 hours.

Plaintiff also over staffed preparation of the mediation brief, resulting in 28.3 hours attributed to the mediation brief by 4 people (Ryan-6/24; Diamond-7/21; Jaramillo-7/23, 8/7, 8/8, 8/11, 8/12; Zinner-8/1). This 10 page letter should take no more than half the 28.3 hours, and probably less, especially after spending so much time on the litigation memo. The Court should reduce this by at least 14 hours.

**D.    Inter-Office Communications Should Not be Recoverable.**

Plaintiff also seeks compensation for calls and emails between co-counsel. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." (*Hensley, supra*, 461 U.S. at 434 (internal citations omitted), *see also Levander v. I.C. System, Inc.*, 2011 WL 1630171, *3 (E.D. Mich. 2011).) Standard billing practice is not to bill clients for inter-office conferences or communications between their counsel. Here Plaintiff seeks recovery for many such conferences (Djemal-8/26[2]; Diamond-; Tehva-2/10; Ryan-; Silva-1/7[3], 3/3, 3/4[4], 5/27[5]; Borison-1/28, 6/17, 7/13; Jaramillo-1/6,1/7,1/9, 1/31, 3/3, ¾, 3/24, 4/8, 4/11, 4/17, 4/25, 5/6, 5/20, 5/27, 5/28, 5/29, 6/9, 6/13, 7/1, 7/21, 8/6, 8/7, 8/26, 9/25, 9/30, 10/6; Zinner-7/22; Abraham-2/4, 2/6, 2/9, 2/11 twice, 3/11, 5/6, 5/8, 5/18, 6/6, 6/26, 7/6, 7/13), totaling 14.45 hours. All such hours should be disallowed.

---

[2] Note that Djemal bills .9 for this conversation and Jaramillo bills .7.

[3] Note that Silva bills .5 for this conversation, while Jaramillo bills .3 hours.

[4] Note that Silva bills .4 for this conversation while Jaramillo bills .1 hours.

[5] Note that Silva bills .8 for this conversation, and Jaramillo bills .7 hours.

E.    **Plaintiff Seeks to Recover Hours Which Are Block Billed, Making Them Impossible to Determine Whether They Are Reasonable and Necessary.**

Plaintiff's attorneys lump many tasks into one entry, failing to provide the Court with sufficient information to determine whether to award fees for those hours (Ryan-2/17, 4/18, 4/25, 5/6, 7/21, 7/22; Jaramillo-6/18, 6/23, 7/31, 8/6; and 2 hours by Borison f0r 9 calls and emails with opposing counsel).  Most of these entries are for items that are discussed above as examples of excessive billing. Because Plaintiff did not provide sufficient information in the moving papers, Plaintiff should not be able to add additional information in the reply brief which cannot be addressed by PRI.  For these reasons, all of these hours should be reduced.

F.    **The Hours Should Be Cut Further.**

Given the over staffing on this simple matter with no real factual disputes, and the specific examples identified above, the hours should be cut across the board by a percentage.  (*Thayer v. Wells Fargo Bank, N.A.*, 92 Cal.App.4th 819, 841-44 (2001) (determining that a negative multiplier was justified absent further factual development due to duplicative work).) Additionally, a percentage cut of hours is appropriate because of the block billing.  Additionally, Plaintiff provided hours for EBCLC when proposing an agreed to resolution to the attorneys' fees and costs.  Without disclosing those settlement negotiations, the EBCLC hours totaled 106.9 hours (reflecting $26,325 in fees including the higher Silva rate).  (*See* EBCLC Hours, Exhibit B.)  PRI responded with a settlement figure, and noted that the hourly rates for Silva was too high because she was not an attorney at the time.  The parties have not yet been able to reach an agreement. Nonetheless, in Plaintiff's Motion, EBCLC is now seeking a lower hourly rate for Silva, but has changed the hours incurred to reflect 126.05 hours – a nearly 25% increase in hours (for a total of $30,059 including the lower Silva rate).  PRI has argued that the Court should cut 100 hours from 150 hours Plaintiff seeks, approximately, which is a two thirds cut on specific items listed above. Plaintiff seeks compensation for 264 hours.  PRI asks that the Court consider another 25% cut on the remaining hours, 114 hours, which would be an additional 28 hours.

G.    **Plaintiff Counsel's Hourly Rate Is Excessive.**

In justifying the claimed $600-$375 hourly rates, Plaintiff supports the hourly rates based

1    on the number of years practices, and reference to one or two awards, without sufficient citation to

2    verify the claimed award.  Plaintiff also adds Balam Letona's declaration for support.  Mr. Letona's

3    declaration merely references the years of practice.  None of this proffered evidence will assist this

4    Court in determining the reasonableness of the requested rates.  None of the declarations set forth

5    the experience of each respective person has in FDCPA litigation.  The Court cannot tell whether

6    the cases referenced off handedly as awarding similar rates for these specific attorneys were

7    complicated cases, or class actions justifying a higher rate for more complex work, or simple cases

8    involving no factual disputes which would justify a lower rate.  There is no information about how

9    long these other cases were litigated, as compared to this case, which lasted less than 1 ½ years.

10          Moreover the burden is on Plaintiff to provide such evidence, and evidence submitted in

11    any reply brief should be dismissed, because PRI cannot address this late submitted evidence:

12              With respect to determining the appropriate hourly rate, courts
                generally calculate a reasonable fee according to prevailing market
13              rates in the relevant legal community.  *Blum v. Stenson*, 465 U.S.
                886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). The general rule
14              is that courts use the rates of attorneys practicing in the forum
                district, in this case, the Eastern District of California, Sacramento.
15              *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (1993); *Davis v. Mason
                County*, 927 F.2d 1473, 1488 (9th Cir.1991), cert. denied 502 U.S.
16              899, 112 S.Ct. 275, 116 L.Ed.2d 227 (1991). The burden is on the
                fee applicant to produce satisfactory evidence that the requested
17              rates are "in line with those prevailing in the community for similar
                services by lawyers of reasonably comparable skill, experience and
18              reputation." *Blum*, 465 U.S. at 895 n. 11. A court will normally
                deem a rate determined in this way to be reasonable. *Id.*
19

20    (*Riker v. Distillery*, 2009 WL 4269466, *2 (E.D. Cal. 2009).)

21          Courts within the Northern District have capped the award of a reasonable fee for an

22    experienced attorney in a garden variety, non-complex case such as this one at approximately

23    $250.00 per hour.  (*Johnson v. Credit International, Inc.,* 2005 WL 2401890, *4 (N.D. Cal. July

24    28, 2005), *aff'd*, 257 F. App'x 8, 11 (9th Cir. 2007) (hourly rate of $250 per hour used for fee

25    award for Irv Berg in a case that resolved on through a Rule 68 offer) (unpublished); *see also

26    Riker, supra*, 2009 WL 4269466, *2 (citing *Haworth v. Haddock*, 2008 WL 697595, *1 (E.D. Cal.

27    2008)); *Garcia v. Tariq*, 2007 WL 2492614, *3 (E.D. Cal. 2007); *Chapman v. Pier 1 Imports,

28    Inc.*, 2007 WL 2462085, *4 (E.D. Cal. 2007).)

1        In contrast, Defendants submit the Declaration of June D. Coleman to show the prevailing

2    rates for comparable work in this District.  Defense counsel, Ms. Coleman, provides extensive

3    evidence supporting a finding that the reasonable hourly rate applicable to this case is $250 - $400.

4    (See Coleman Decl., ¶¶ 2 - 14.)

5        Furthermore more, Plaintiff provides no evidence to support a paralegal rate or a law clerk

6    rate.  There is no support for $150 per hour requested for paralegal/clerical/law clerk hours.  (*Hensley,*

7    *supra*, 461 U.S. at 437 (moving party bears burden); see *Flegal v. First Source Advantage, LLC*, 2011

8    WL 1793171, *3 (W.D.N.Y. 2011) (Krohn & Moss is awarded $50 per hour for paralegal work).)

9    Absent evidence, the Court can either exclude the requested time or reduce the time.  (*Schultz v.*

10   *Ichimoto*, 2010 WL 3504781, *8 (E.D. Cal. 2010) ($75 rate for paralegal work); *Beauford v. E.W.H.*

11   *Group Inc.*, 2009 WL 3162249, *6 (E.D. Cal. 2009) (Judge Ishii excluded paralegal time that was not

12   supported by evidence of reasonable market rate).)  The paralegal hours should be disallowed.

13   **H.**     **The Court Should Also Reduce the Fee Award Due to the Degree of Success.**

14        "[T]he most critical factor" in determining the reasonableness of a fee award "is the degree of

15   success obtained."  (*Hensley supra,* 461 U.S. at 436.).  Courts have applied this United States

16   Supreme Court holding by reviewing how much did a plaintiff settle for in comparison to how much

17   the plaintiff originally sought. (*McClenning v. NCO Financial Systems, Inc.*, 2011 WL 1375161, *2

18   (C.D. Cal. 2011) (awarding $8,500 in fees from a $24,050 request based on settling case as to

19   damages for 1/3 of damages portion of initial demand); see also *Carroll, supra*, 53 F.3d at 630

20   (abandoning emotional distress damages and obtaining on a $50 statutory damage award justified

21   serious reduction in fees).)  Here, Ms. Price-Pauline sought hundreds of thousands of dollars in actual

22   damages and statutory damages, and resolved the case for $12,500.  This is a less than 10% success

23   rate.  The Court can reduce fees to properly reflect the limited success achieved as compared to the

24   amount of damages sought.  In that Ms. Price-Pauline only obtained less than 10% of what she

25   initially demanded, the fee could be reduced by 90%.  PRI proposes a 50% cut.

26   **IV.**

27   **CONCLUSION**

28        Based on the foregoing, PRI requests that this Court grant Plaintiff fees in the amount of

based on the following deductions.

| | East Bay | | | | |
|---|---|---|---|---|---|
| | Djemal | Diamond | Tehva | Ryan | Silva |
| Rates | $ 300 | $ 125 | $ 125 | $ 250 | $ 125 |
| Hours Claimed | 10.6 | 35.9 | 40.8 | 34.25 | 4.5 |
| Deductions | | | | | |
| admin | | | | 6 | 0 |
| research regs | | | 3.6 | | |
| complaint | | | 9 | | |
| duplicate | | 10 | | 1 | |
| block billing | | | | 6.375 | |
| internal communications | 0.9 | | 0.2 | | 1.8 |
| TRO | | | | | |
| mediation brief | | 4.5 | | 0.5 | |
| bona fide error research | | 14 | | | |
| amended ID | | | | | |
| litigation memo | | | 7 | | |
| Subtotal of Deductions | 0.9 | 28.5 | 19.8 | 13.875 | 1.8 |
| Award Fees Before Percentage Reduction | $ 2,910 | $ 925 | $ 2,625 | $ 5,094 | $ 338 |
| 25% Reduction on Remaining Hours | | | | | |
| Remaining Hours | 9.7 | 2.9 | 1.4 | 5.5 | 2.7 |
| 25% Reduction on Fees for Remaining Hours | $ 727.50 | $ 90.63 | $ 43.75 | $ 343.75 | $ 84.38 |
| Fees Awarded | $ 2,182.50 | $ 834.38 | $ 2,581.25 | $ 4,750.00 | $ 253.13 |

| | HERA | | | |
|---|---|---|---|---|
| | Borison | Jaramillo | Zinner | Abraham |
| Rates | $400 | $300 | $300 | $200 |
| Hours Claimed | 59.87 | 58.4 | 19.3 | 21.3 |
| Deductions | | | | |
| admin | 6.3 | 2.7 | 1.9 | 2.9 |
| research regs | 2 | | 1 | 1 |
| complaint | | | | |
| duplicate | | | 1.5 | |

| | | | | |
|---|---|---|---|---|
| block billing | 2 | 2.2 | | |
| internal communications | 2.75 | 6.7 | 0.3 | 2.1 |
| TRO | | 2 | | |
| mediation brief | | 5.7 | | |
| bona fide error research | | 0.7 | | |

| | | | | |
|---|---|---|---|---|
| Subtotal of Deductions | 13.05 | 20 | 4.7 | 6 |

| | | | | |
|---|---|---|---|---|
| Award Fees Before Percentage Reduction | $ 18,728 | $ 11,520 | $ 4,380 | $ 3,060 |

| | | | | |
|---|---|---|---|---|
| 25% Reduction on Remaining Hours | | | | |
| Remaining Hours | 46.82 | 32.7 | 13.6 | 15.3 |
| 25% Reduction on Fees for Remaining Hours | $ 4,682.00 | $2,452.50 | $ 1,020.00 | $ 765.00 |
| Fees Awarded | $14,046.00 | $9,067.50 | $ 3,360.00 | $ 2,295.00 |

Thus, PRI requests that the Court award fees of no more than $49,579.25 if an across the board reduction is not made, and no more than $39,369.76 if a 25% reduction is taken on the number of hours not specifically addressed above. Then PRI requests that the Court award no fees for paralegals/law clerks Diamond, Tehva and Silva, which would reduce the fees by approximately $6,357 before any across the board cut and by $3,668 after any across the board reduction.

Dated:  August 25, 2015          KRONICK, MOSKOVITZ, TIEDEMANN & GIRARD
                                 A Professional Corporation


                        By:    /s/ June D. Coleman
                               _____
                               June D. Coleman
                               Attorneys for Defendant PERFORMANT
                               RECOVERY, INC.

OPPOSITION TO MOTION FOR ATTORNEYS' FEES AND COSTS

<b><u>PROOF OF SERVICE</u></b>

**STATE OF CALIFORNIA, COUNTY OF SACRAMENTO**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Sacramento, State of California.  My business address is 400 Capitol Mall, 27th Floor, Sacramento, CA 95814.

On August 25, 2015, I served true copies of the following document(s) described as **OPPOSITION TO MOTION FOR ATTORNEYS' FEES AND COSTS** on the interested parties in this action as follows:

<b>SEE ATTACHED SERVICE LIST</b>

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on August 25, 2015, at Sacramento, California.


/s June D. Coleman
June D. Coleman

| | |
|---|---|
| 1 | **SERVICE LIST** |
| 2 | |
| 3 | Noah Zinner |
| | Housing and Economic Rights Advocates |
| 4 | 1814 Franklin Street, Suite 1040 |
| | Oakland, CA 94612 |
| 5 | Telephone: (510) 271-8443 |
| | Facsimile: (510) 868-4521 |
| 6 | E-Mail: nzinner@heraca.org |
| 7 | Sharon Djemal |
| | East Bay Community Law Center |
| 8 | 3130 Shattuck Ave. |
| | Berkeley, CA 94705 |
| 9 | Telephone: (510) 269-6612 |
| | Facsimile: (510) 849-1536 |
| 10 | E-Mail: sdjemal@ebclc.org |
| 11 | Scott C. Borison |
| | Legg Law Firm, LLC |
| 12 | 1900 S. Norfolk St., Suite 350 |
| | San Mateo, CA 94403 |
| 13 | Telephone: (301) 620-1016 |
| | Facsimile:  (301) 620-1018 |
| 14 | Email: borison@legglaw.com |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |